ANELLO *v.* STATE

[No. 45, October Term, 1952.]

*Decided December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*William J. O'Donnell,* with whom was *Anthony S. Federico,* on the brief, for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, with whom were *J. Edgar Harvey,* Deputy Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *Henry L. Rogers,* Assistant State's Attorney, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was taken by Vincent J. Anello, age 21, from a conviction by the Criminal Court of Baltimore on an indictment charging that he and Anthony J. Verella unlawfully took and carried away out of the custody and use of Dewey Farbman a Cadillac automobile of the value of $2,500.

Farbman had parked his car in front of his home on Clarinth Road on the evening of February 5, 1952, at

6 o'clock. He did not lock the doors on the left side of the car. About 2 o'clock the next morning an automobile speeded past two traffic officers riding in a patrol car at the intersection of Liberty Heights Avenue and Reisterstown Road. The police turned and went in pursuit of the automobile. They followed it into Gwynn's Falls Parkway, and just as it turned west of the grounds of the Western High School to go south into Warwick Avenue, it got out of the driver's control and. leaped the curb. As soon as it came to a stop three men jumped out and ran across the high school lawn. The police gave chase and caught two of the men, Anello and Verella, near the bushes on the lawn. The third man escaped. The policemen found that the automobile, which was Farbman's Cadillac, had been "hot wired," *i.e.*, had been tampered with by the insertion of a piece of tinfoil back of the ignition switch to start the engine without an ignition key. The car had been damaged to the extent of about $250.

Defendants claimed that the man who escaped was the only one who was guilty. But they said that they did not know his name other than Sam. They testified that they happened to meet him when they came out of the Little Tavern Shop at North and Linden Avenues. They claimed that Sam said that he knew where to get some girls and that they agreed to go with him, although they had seen him only a few times before. Appellant testified that he offered to go in his car, but Sam suggested that they go in his, which was parked nearby on Eutaw Place; that Sam had keys with which he unlocked the car, and that he drove the car while Verella sat in the front seat and he sat in the back seat; that after they had gone a short distance, they were arrested by the police. Appellant claimed that it was not until Sam jumped out of the car that he suspected that the car did not belong to him.

The Court, sitting without a jury, found defendants guilty, and sentenced Anello to the Maryland House of Correction for 18 months, and Verella to the Maryland

State Reformatory for Males for a period of not more than 18 months. Appellant contends that there is no evidence that he either took and carried away the automobile out of the custody or care of Farbman or aided or abetted any one in taking and carrying it away from him. He claims that he had no knowledge that the man who escaped had taken the automobile unlawfully, but was riding as an innocent passenger on the back seat.

In Maryland it is a misdemeanor for any person, his aiders or abettors, to take and carry away out of the custody or use of any other person any of the enumerated kinds of property, including motor vehicles, although it may appear from the evidence that the offender, his aiders and abettors, took and carried away the property for his or their present use, and not with the intent of appropriating or converting the same. Code 1951, art. 27, sec. 415. This statute originated in 1880 when the Legislature created the misdemeanor of larceny of the use of any horse or other animal or any carriage or other vehicle, though taken for present use, and not with the intent of appropriating or converting the same. Laws 1880, ch. 164. In 1918 the Legislature expressly included motor vehicles within the purview of the statute. Laws 1918, ch. 422.

In 1947 the Court of Appeals held in *Wright v. Sas,* 187 Md. 507, 50 A. 2d 809, that this statute was not repealed by implication by the Legislature in 1943 by the complete revision of the Maryland Motor Vehicle Law, which contains the provision that a person is guilty of a misdemeanor who drives a motor vehicle, not his own, without the consent of the owner of it, and with intent temporarily to deprive the owner of his possession of it, without intent to steal it. Laws 1943, ch. 1007, sec. 154, Laws 1945, ch. 504, Code 1951, art. 66½, sec. 172. As we said in that case, intent to deprive the owner of his possession includes future possession and is not limited, as in common-law larceny, to a taking out of present possession. Therefore, participation in the continued use of the car after the original taking

would manifest an intent to deprive the owner of his possession during such participation.

It is clear that no one, whether principal perpetrator or aider or abettor, can violate this statute unless he possesses criminal intent. The legal definition of the word "aider" is not different from its meaning in common parlance. It means one who assists, supports or supplements the efforts of another. The word "abettor" means in law one who instigates, advises or encourages the commission of a crime. Thus the word "abet" may import that one is present at the commission of a crime without giving active assistance. *Creasy v. Commonwealth,* 166 Va. 721, 186 S. E. 63; *State v. Epps,* 213 N. C. 709, 197 S. E. 580; *State ex rel. Martin v. Tally,* 102 Ala. 25, 15 So. 722, 737; *State v. Western Union Telegraph Co.,* 13 N. J. Super. 172, 80 A. 2d 342, 355. Just as there are no accessories in petit larceny at common law, but all participants are principals, likewise there are no accessories in the larceny of use of property, as the statute makes aiders or abettors equally guilty with the principal perpetrator of the crime. *Slaughter v. State,* 113 Ga. 284, 38 S. E. 854. To be an aider or abettor it is not essential that there be a prearranged concert of action, although, in the absence of such action, it is essential that one should in some way advocate or encourage the commission of the crime. *McKinney v. Commonwealth,* 284 Ky. 16, 143 S. W. 2d 745. While guilty knowledge is essential to a conviction of a person accused of larceny of use, such knowledge may be inferred from facts and circumstances such as would cause a reasonable man of ordinary intelligence, observation and caution to believe that the property had been unlawfully taken.

In the case at bar appellant had considerable experience in the unauthorized use of automobiles. He admitted on cross-examination that he had been convicted of unlawfully taking nine automobiles, a Lincoln, Chrysler, Studebaker, Plymouth, De Soto, two Plymouths and two Fords. He also admitted that in March, 1949, he

was convicted on two charges of burglary, and was sentenced to imprisonment for the term of two years in each case, the terms to run concurrently. He further admitted that in 1951 he was found guilty and fined by a magistrate for disorderly conduct. The stories told by defendants to the police and the Court were inconsistent and incredible. One of the arresting officers testified that defendants told him shortly after they were arrested that they had been invited to take a ride by a man standing on the corner of North and Linden Avenues, and that they had never seen the man before. It would be straining one's credulity to believe that a man 21 years old with a very bad criminal record could get into an expensive Cadillac sedan after midnight with a man whom he claimed he knew only by the name of Sam and ride in it until 2 o'clock in the morning without having any criminal intent. The fact that the car was "hot wired" and the fact that the three men jumped out of the car together in the attempt to escape from the police fortify the inference that appellant had knowledge that the car had been unlawfully taken.

On appeal from a judgment of conviction in a criminal case tried by the court, the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court will not be set aside on the evidence unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. General Rules of Practice and Procedure, part 4, rule 7(c) ; *Edwards v. State,* 198 Md. 132, 81 A. 2d 631, 639; *Kaufman v. State,* 199 Md. 35, 85 A. 2d 446. We cannot say that the verdict in this case was clearly erroneous. The judgment of conviction must therefore be affirmed.

*Judgment affirmed, with costs.*