# THOMAS *v.* STATE OF MARYLAND

[No. 71, September Term, 1975.]

*Decided March 8, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*James M. Kramon,* with whom were *Kramon& Graham* on the brief, for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

Petitioner, Jerome Thomas, was convicted in the District Court of Maryland, Baltimore City, of violating Maryland Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.), Art. 66½, § 4-102. Section 4-102 provides that it is a misdemeanor to "drive" a motor vehicle without the consent of its owner and with the intent temporarily to deprive the owner of possession.[1] Thomas was subsequently tried and convicted in

---

1. Under Art. 66½, § 17-101 (b) (ii), a violation of § 4-102 is punishable by a fine of not more than $500 or by imprisonment of not more than two months or by both fine and imprisonment.

the Circuit Court for Montgomery County for violating Code (1957, 1976 Repl. Vol.), Art. 27, § 349, often referred to as the "unauthorized use" statute. Section 349, *inter alia*, proscribes the "taking" of a motor vehicle without the consent of the owner and without the intent to appropriate or convert the vehicle.[2] Both prosecutions were based upon the same course of conduct. The question presented is whether, under the circumstances of this case, the second prosecution in the circuit court was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which is applicable to state court proceedings by virtue of the Fourteenth Amendment.

Officer John Holt of the Baltimore Harbor Tunnel Police Force stopped Thomas on February 6, 1973, as Thomas was backing an automobile away from a toll booth. The officer inquired why Thomas was backing away from an open booth and asked to see Thomas's driver's license and vehicle registration card. Thomas was unable to produce the documents, stating that he had left his operator's license at home and that he had borrowed the car from a friend identified only as "Frank." Officer Holt learned the identity of the owner of the automobile from the District of Columbia Motor Vehicle Department, and discovered from the owner that he had not loaned the car to anyone but that the vehicle had been stolen from the lot of an automobile repair shop in Montgomery County. Thomas was charged with violating Art. 66$^1$/$_2$, § 6-101 (failure to have operator's permit) and with violating Art. 66$^1$/$_2$, § 4-102. Trial was held on March 1, 1973, in the District Court of Maryland, where Thomas was found guilty of both violations of Art. 66$^1$/$_2$ and sentenced to two consecutive 60 day terms of imprisonment.

Thereafter, on June 7, 1973, Thomas was indicted by the Grand Jury for Montgomery County in a three count indictment charging him with larceny of a motor vehicle in violation of Art. 27, § 348, unauthorized use of a motor

---

**2.** Violation of Art. 27, § 349, is also a misdemeanor punishable by a fine not to exceed $100 or by imprisonment of not less than six months nor more than four years or by both fine and imprisonment.

vehicle in violation of Art. 27, § 349, and receiving stolen property in violation of Art. 27, § 466. All charges were based upon the same series of events as involved in the district court prosecution. Thomas filed a motion to dismiss the indictment on the grounds of res judicata, collateral estoppel, and double jeopardy. The motion was denied after a hearing, the court stating in its opinion and order of April 1, 1974, that the applicable test to determine whether two separate statutory provisions constitute a single offense is "whether each provision requires proof of a fact which the other does not." The court concluded that the previous offenses were not the same as those charged in the indictment. Trial was held on August 19, 1974, when Thomas renewed the motion to dismiss which was again denied. At the conclusion of the trial, the court dismissed the count charging receiving stolen property as well as the larceny count, finding as to the latter that the previous district court conviction of driving a vehicle without the consent of the owner conclusively established that Thomas did not have the requisite intent to deprive the owner of possession permanently. Thomas was found guilty of unauthorized use of a motor vehicle. The court reiterated and elaborated upon its previous order denying Thomas's motion, finding that the offense of driving without consent (Art. 66$\frac{1}{2}$, § 4-102) had at least one "dissimilar" element, driving, which the offense of unauthorized use (Art. 27, § 349) did not. Thomas was sentenced to two years' imprisonment, with credit for the time served as a result of the district court convictions.

Thomas appealed the unauthorized use conviction to the Court of Special Appeals, contending that the offense of driving a vehicle without the consent of the owner (§ 4-102) and unauthorized use of a vehicle (§ 349) constitute the same offense within the meaning of the prohibition against double jeopardy. Thomas argued that § 349 did not require proof of any additional fact not required by § 4-102 (a), and hence the two provisions constituted the same offense for double jeopardy purposes.

The Court of Special Appeals rejected Thomas's argument, finding that § 4-102 (a) required proof of driving, not an element of § 349, while § 349 required proof of entry, which is not an element of § 4-102 (a). Thus, the Court of Special Appeals held that the two provisions both require proof of a fact which the other does not and therefore are not the same offense within the meaning of the double jeopardy clause. The court also concluded that the element of entry in § 349 need not be affirmatively proven but could be inferred from the evidence that Thomas was operating a vehicle which had been taken without the consent of the owner or his bailee, and that neither had given Thomas permission to operate the automobile. We granted certiorari to consider whether, under the circumstances of this case, both offenses are to be deemed the same so that a prior conviction for one would bar a subsequent trial on the other.

Traditionally, the Fifth Amendment prohibition against placing a defendant twice in jeopardy for the same offense has been said to extend to three distinct situations. It bars a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U. S. 711, 717, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969).[3] As was noted in *Pearce*, common law principles regarding double jeopardy, including the prohibition against a second trial for the same offense after conviction, had been recognized by the Court in *Ex Parte*

---

**3.** Moreover, the double jeopardy prohibition also has been held to extend to circumstances which may not be viewed as neatly falling into one of these three categories. *See, e.g.*, Ashe v. Swenson, 397 U. S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970) (principle of collateral estoppel included within the double jeopardy clause); Price v. Georgia, 398 U. S. 323, 329, 90 S. Ct. 1757, 26 L.Ed.2d 300 (1970) (where conviction of a lesser included offense is reversed on appeal and a new trial ordered, a retrial for the greater offense is precluded); Jourdan v. State, 275 Md. 495, 341 A. 2d 388 (1975) (prosecution for the same offense after a mistrial has been declared, where no "manifest necessity" existed for the mistrial); Blondes v. State, 273 Md. 435, 330 A. 2d 169 (1975) (entry of a nolle prosequi after jeopardy attaches prevents continued prosecution for the same offense, even though two different charging documents are involved); Pugh v. State, 271 Md. 701, 319 A. 2d 542 (1974) (double jeopardy prohibition prevents trial judge, after intentionally rendering a "not guilty" verdict following court trial, from changing his mind and finding the defendant guilty).

*Lange,* 18 Wall. 163 (1873), as being inherent in the constitutional guarantee against double jeopardy:

> "The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted." 18 Wall. at 169.

> ". . . we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." 18 Wall. at 173.

*See also United States v. Wilson,* 420 U. S. 332, 339-342, 95 S. Ct. 1013, 43 L.Ed.2d 232 (1975); J. Sigler, *Double Jeopardy* 27-34 (1969). And as this Court stated in *Gilpin v. State,* 142 Md. 464, 466, 121 A. 354 (1923), under both common law principles and the double jeopardy provision of the United States Constitution a second trial for the same offense after a prior conviction is prohibited:

> "That no person shall, for the same offense, be twice put in jeopardy, is both a provision of the Constitution of the United States, and an established rule of the common law, and a plea of former jeopardy is good under either. The rule forbids a second trial for the *same offense* whether the accused at the former trial was acquitted or convicted."

But while the rule is clear, its application often is not. A principal difficulty which frequently arises is determining when two separate statutory provisions constitute the same offense for double jeopardy purposes.

The most widely used test for determining whether two offenses are the same for double jeopardy purposes is the "same evidence test" or "required evidence test," which focuses upon the evidence necessary to sustain a conviction on each offense. In the landmark case of *Rex v. Vandercomb and Abbot,* 2 Leach 708, 168 Eng. Rep. 455 (1796), the

indictment charged the defendants with breaking and entering a house. The defendants were acquitted when it was learned that the larceny had been committed a day earlier than charged in the indictment. It was held that a subsequent prosecution under an indictment alleging the proper date was not barred by the prior acquittal, the court stating "that unless the first indictment were such as the prisoner might have been convicted upon proof of facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second." 2 Leach at 720. Multiple prosecutions were prohibited only if the evidence necessary to secure a conviction in the second prosecution would have been sufficient to convict in the first prosecution also. Thus, under the rule in *Vandercomb*, the order in which prosecutions were brought was critical in determining whether two prosecutions were to be permitted. For example, if the second prosecution were for a lesser offense, the evidence necessary to convict in the second prosecution would not be sufficient for the first prosecution and therefore the second prosecution would be permitted. The result would be otherwise if the second prosecution were for the greater offense. *See* Comment, *Double Jeopardy*, 75 Yale L. J. 262, 270-271 (1965).

The leading early American case applying the same evidence test is *Morey v. Commonwealth*, 108 Mass. 433 (1871). The defendant had been convicted of "lewd and lascivious cohabitation" and later of adultery, both charges arising from the same incident. On appeal, the defendant contended that his conviction for cohabitation barred the later conviction for adultery as the acts alleged in the indictment charging adultery were the same as those upon which he was convicted of cohabitation. The court rejected this argument, emphasizing that the identity of offenses is not determined by the acts of the defendant, but rather by the evidence required by the statutes for conviction:

> "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have

been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and *if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."* (108 Mass. at 434, emphasis supplied.)

By holding that each offense charged must require proof of a fact which the other does not, the court emphasized that the evidence distinguishing the two offenses must be that *required* by the statute and not merely evidence adduced at trial. *Morey* also significantly modified the rule in *Vandercomb*, expanding the protection afforded by applying the rule there "backwards." Thus, under *Morey*, a subsequent prosecution was barred not only when the evidence required to convict on the second charge would support a conviction on the first, as held in *Vandercomb*, but also when the evidence required to secure a conviction on the first charge would have supported a conviction on the subsequent charge.

The required evidence test as formulated in *Morey* was adopted by the Supreme Court as the standard for determining whether separate statutory offenses were the same for double jeopardy purposes. In *Gavieres v. United States*, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489 (1911), the Court held that successive prosecutions for drunk and disorderly conduct and for insulting a public official were not prohibited by the Fifth Amendment protection against double jeopardy even though both offenses arose from the same incident. The court relied upon the *Morey* test that two offenses are not the same " 'if each statute requires proof of an additional fact which the other does not . . . .' " 220 U. S. at 342.

Similarly, in *Blockburger v. United States*, 284 U. S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the Supreme Court used the required evidence test in determining that multiple

sentences on each of two counts of an indictment, both of which were based upon a single sale of morphine to the same purchaser, did not violate the prohibition against double jeopardy. One count charged a sale of morphine not in or from an original stamped package as required by statute, while the other charged that the same sale was not made pursuant to a written order of the purchaser as required by statute. The Court rejected the contention that both counts charged but one offense for which only a single penalty could be imposed, stating (284 U. S. at 304):

> "Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

As made clear in *Blockburger*, by looking to the evidence required by the statute for conviction, the required evidence test focuses upon the elements of each statute. Thus, each statute constitutes a separate offense if each contains a distinct element.[4]

The required evidence test used in *Blockburger* was expressly reaffirmed in *Gore v. United States*, 357 U. S. 386, 78 S. Ct. 1280, 2 L.Ed.2d 1405 (1958), where the Court rejected the contention that the test was not consistent with the constitutional prohibition against double jeopardy. The required evidence test has continued to be the standard by which the federal courts have determined whether two

---

**4.** In contrast to the required evidence or same evidence test is the actual evidence test. Under this test, offenses are the same if the evidence actually offered on both is substantially similar. This test was rejected in Harris v. United States, 359 U. S. 19, 23, 79 S. Ct. 560, 3 L.Ed.2d 597 (1959), where the court upheld multiple punishments for two narcotics violations even though the only evidence offered on both was the defendant's possession of heroin. Possession raised rebuttable statutory presumptions of concealment and illegal purchase which, if rebutted, would require proof of different facts. Thus, under the required evidence test the two offenses were distinct, whereas under the actual evidence test, they were the same. *See also* United States v. Kramer, 289 F. 2d 909 (2d Cir. 1961), where the United States Court for the Second Circuit, in an opinion by Judge Friendly, expressly rejected the actual evidence test and applied the required evidence test.

separate statutory offenses constitute the same offense for double jeopardy purposes. *Ebeling v. Morgan,* 237 U. S. 625, 630-631, 35 S. Ct. 710, 59 L. Ed. 1151 (1915); *Burton v. United States,* 202 U. S. 344, 381, 26 S. Ct. 688, 50 L. Ed. 1057 (1906); *Carter v. McClaughry,* 183 U. S. 365, 394-395, 22 S. Ct. 181, 46 L. Ed. 236 (1902); *In re Nielsen,* 131 U. S. 176, 188, 9 S. Ct. 672, 33 L. Ed. 118 (1889); *Robbins v. United States,* 476 F. 2d 26, 32-33 (10th Cir. 1973); *United States v. Wilder,* 463 F. 2d 1263, 1266 (D.C. Cir. 1972); *United States v. Bruni,* 359 F. 2d 807, 809 (7th Cir.), *cert. denied,* 385 U. S. 821, 87 S. Ct. 48, 17 L.Ed.2d 59 (1966); *Harlow v. United States,* 301 F. 2d 361, 375 (5th Cir.), *cert. denied,* 371 U. S. 814, 83 S. Ct. 25, 9 L.Ed.2d 56 (1962); *United States v. Kramer,* 289 F. 2d 909, 913 (2d Cir. 1961); *V. E. Irons, Inc. v. United States,* 244 F. 2d 34, 45 (1st Cir.), *cert. denied,* 354 U. S. 923, 77 S. Ct. 1383, 1 L.Ed.2d 1437 (1957). *See also Iannelli v. United States,* 420 U. S. 770, 785, n. 17, 95 S. Ct. 1284, 43 L.Ed.2d 616 (1975).

The Maryland cases have also consistently focused upon the evidence required to convict to determine whether two offenses are the same for double jeopardy purposes. In *Gilpin v. State, supra,* 142 Md. at 467, the Court rejected a plea of former acquittal to an indictment charging conspiracy to rob where the defendant had been previously acquitted on charges of robbery, assault with intent to rob, and assault and battery. The Court noted that the evidence necessary to convict on the substantive offenses was substantially different from the evidence necessary to convict on the conspiracy charge, and therefore the offenses were not the same. Similarly, in *State v. Coblentz,* 169 Md. 159, 180 A. 266 (1935), the Court rejected a plea of res judicata to an indictment charging publication of false bank statements where the defendant had previously been acquitted of accepting bank deposits knowing the bank to be insolvent. The test applied was that a plea of res judicata or *autrefois acquit* would not be sustained unless "the evidence necessary to produce a conviction in one case must be adequate to support a conviction in the other," 169 Md. at 169. By examining the elements of each statutory offense there involved, the Court in *Coblentz* concluded that different evidence was necessary to sustain a conviction on

the two charges. Accordingly, the Court held that the subsequent prosecution was not barred by the prior acquittal. *See*, in addition, *Veney v. State*, 227 Md. 608, 613-614, 177 A. 2d 883 (1962); *Young v. State*, 220 Md. 95, 100, 151 A. 2d 140 (1959), *cert. denied*, 363 U. S. 853, 80 S. Ct. 1634, 4 L.Ed.2d 1735 (1960); *Bonneville v. State*, 206 Md. 302, 312, 111 A. 2d 669 (1955); *Williams v. State*, 205 Md. 470, 479-480, 109 A. 2d 89 (1954); *Rouse v. State*, 202 Md. 481, 97 A. 2d 285, *cert. denied*, 346 U. S. 865, 74 S. Ct. 104, 98 L. Ed. 376 (1953).[5]

Certain principles concerning the required evidence or same evidence test emerge from the cases. The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes. And of course if both statutes have exactly the same elements, the offenses are also the same within the meaning of the prohibition against double jeopardy, and successive prosecutions are barred.

Turning to the present case, we agree with the Court of Special Appeals that Art. $66^1/_2$, § 4-102, requires proof of driving, whereas other forms of taking the vehicle would

---

**5.** *But cf.* Bennett v. State, 229 Md. 208, 182 A. 2d 815 (1962), recognizing the *Blockburger* required evidence test but upholding successive prosecutions for offenses, which would be deemed the same under *Blockburger*, where the respective offenses were each within the exclusive jurisdiction of different courts. However, later in Waller v. Florida, 397 U. S. 387, 90 S. Ct. 1184, 25 L.Ed.2d 435 (1970), the Supreme Court held that successive prosecutions for different statutory offenses deemed the same for double jeopardy purposes were prohibited even though the jurisdiction to try each separate statutory offense was within different courts of the same state. Of course, since Benton v. Maryland, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), holding that the Double Jeopardy Clause of the Fifth Amendment is applicable to state prosecutions, the Supreme Court decisions are controlling in cases presenting double jeopardy issues. *See* Neal v. State, 272 Md. 323, 322 A. 2d 887 (1974); Matter of Anderson, 272 Md. 85, 321 A. 2d 516, *appeal dismissed sub nom* Epps v. Maryland, 419 U. S. 809, 95 S. Ct. 21, 42 L.Ed.2d 35 (1974).

satisfy Art. 27, § 349. On the other hand, we disagree with the Court of Special Appeals that the § 349 offense *as charged in the present case*, required proof of any additional fact not required by the § 4-102 charge. Consequently, both statutes must, *under the circumstances here*, be deemed the same for double jeopardy purposes.

The statutory offense of "driving a vehicle without consent of the owner" proscribed by § 4-102 occurs when one "drives a vehicle, not his own, without the consent of the owner . . . and with intent temporarily to deprive the owner of his possession . . . ." [6] Thus, to secure a conviction under § 4-102 the State must establish that the defendant *drove* a vehicle without the consent of the owner and with the intent to temporarily deprive the owner of his possession.

The statutory offense of "unauthorized use" as defined by § 349 occurs when one "shall enter, or being upon the premises of any other person . . . shall, against the will and consent of said person . . . wilfully take and carry away . . . [a] vehicle . . . *or* take and carry away out of the custody or use of any person . . . [a vehicle] *at whatsoever place the same may be found*" with intent to temporarily deprive the owner of possession. (Emphasis supplied.) [7]

---

6. Section 4-102 (a) provides:

"Driving vehicle without consent of owner.

"(a) Any person who drives a vehicle, not his own, without the consent of the owner thereof, and with intent temporarily to deprive the owner of his possession of such vehicle, without intent to steal it, is guilty of a misdemeanor."

7. Section 349 provides:

"Unauthorized use of livestock or vehicle.

"Any person or persons, his or their aiders or abettors who shall enter or being upon the premises of any other person, body corporate or politic in the State, shall, against the will and consent of said person or persons, body corporate or politic or their agents, wilfully take and carry away any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart or any other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever, or take and carry away out of the custody or use of any person or persons, body corporate or politic. or his or their agents, any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof in any of the courts of this State having criminal jurisdiction be adjudged guilty of a misdemeanor, and shall restore the property so taken and carried away, or, if unable so to do, shall pay to the owner or owners the full value thereof, and be

The Court of Special Appeals interpreted § 349 as requiring proof of entry upon the premises of another person, and thus held that entry was a distinct element of § 349 not found in § 4-102. But it should be noted that the provisions of § 349 are in the disjunctive. The offense can be established either by showing an entry and a taking or by showing a taking of a vehicle from wherever it may be located.

That a violation of § 349 can be established without proving entry is evident from *Anello v. State*, 201 Md. 164, 93 A. 2d 71 (1952). There the evidence showed that the vehicle had been taken from the public street in front of the owner's home where it was parked for the evening. The automobile was seen by the police and stopped. Anello and another passenger attempted to flee but were apprehended. The driver escaped. Anello appealed his conviction under Code (1951), Art. 27, § 415 (the predecessor to § 349), contending that there was no evidence that he participated in the taking of the vehicle. The court upheld the conviction, finding that "participation in the continued use of the car after the original taking would manifest an intent to deprive the owner of his possession during such participation." 201 Md. at 167-168. Thus, participation in the use of the automobile after initial taking is sufficient to secure a conviction under § 349 without a showing that the defendant entered upon the premises of another person. *See also Lee v. State*, 240 Md. 160, 213 A. 2d 503 (1965).[8]

The Court of Special Appeals relied upon *Wright v. Sas*, 187 Md. 507, 50 A. 2d 809 (1947), where in discussing what

fined not less than fifty nor more than one hundred dollars, or be imprisoned in the county or city jail, or the house of correction, for not less than six months nor more than four years, or be both fined and imprisoned as aforesaid, in the discretion of the court, although it may appear from the evidence that such person or persons, his or their aiders and abettors, took and carried away the property or any portion of the same enumerated in this section, for his or their present use, and not with the intent of appropriating or converting the same. . . ."

**8.** It is noteworthy that the indictment in the present case did not allege entry but rather only that Thomas did "unlawfully and willfully take and carry away" the vehicle from the owner. If entry were an element of § 349 as the State now contends, the indictment might be defective for failure to allege the essential elements of the charge. Lank v. State, 219 Md. 433, 149 A. 2d 367 (1959).

are now §§ 4-102 and 349, it was said that although the two sections are "very similar offenses," they are not "the same." The issue in that case was whether, in enacting the motor vehicle code and repealing all prior inconsistent laws, the Legislature intended to repeal Art. 27, § 349, insofar as it relates to motor vehicles. In holding that § 349 was not repealed, the Court noted several differences between the two sections. We agree that the two statutes do differ in several important respects. Section 4-102 specifically requires that the element of driving be established whereas under § 349 no such specific element is found and any mode of taking will suffice. Also, § 4-102 is a more limited provision, applying only to motor vehicles, while § 349 encompasses many diverse forms of property including various animals and any type of vehicle whether motorized or not. Thus it is true that the offenses are not precisely the same. But for the purposes of the constitutional provision against double jeopardy, the § 4-102 offense and the § 349 offense as charged in the indictment in this case are deemed to be the same. Under the *Blockburger* required evidence test, the same evidence necessary to convict on the § 4-102 offense would always be sufficient to establish a § 349 offense such as alleged here. Therefore, Thomas's conviction for violating Art. 66½, § 4-102, barred the subsequent prosecution for violating Art. 27, § 349.[9]

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to the Court of Special Appeals with instructions to reverse the judgment of the Circuit Court for Montgomery County.*
>
> *Costs to be paid by Montgomery County.*

---

**9.** As we hold that Thomas's unauthorized use conviction must be reversed under the required evidence or same evidence test, it is unnecessary for us in this case to consider Thomas's alternate contention that the "same transaction" concept set forth by Mr. Justice Brennan, concurring in Ashe v. Swenson, 397 U. S. 436, 448-460, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970), should be held applicable and would also require a reversal.